# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

CARRIE L. VAUGHT-COADY,  )
                                              )
        Plaintiff,         )
                                              )
v.                                       )        Case No. CIV-14-90-SPS
                                              )
CAROLYN W. COLVIN,          )
Acting Commissioner of the Social  )
Security Administration,             )
                                             )
        Defendant.      )

## OPINION AND ORDER

The claimant Carrie Lynne Vaught-Coady requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).

Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

---

[1]Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

## Claimant's Background

The claimant was born May 6, 1976, and was thirty-four years old at the time of the administrative hearing (Tr. 36, 164). She completed the twelfth grade, and has worked as a retail store manager (Tr. 199, 656). The claimant alleges inability to work since March 25, 2003 due to her bi-polar disorder (Tr. 192).

## Procedural History

On September 25, 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and on January 14, 2011, she applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Michael A. Kirkpatrick conducted an administrative hearing and determined that the claimant was not disabled as to her claim under Title II in a written opinion dated February 28, 2011 (Tr. 15-26). The Appeals Council denied review, but on appeal this Court reversed the decision of the Commissioner in Case No. CIV-11-415-FHS-SPS and remanded the case for further proceedings on March 26, 2013 (Tr. 716-727). On remand, ALJ Bernard Porter conducted a second administrative hearing and again determined that the claimant had not been under a disability from March 1, 2007, through the date of his opinion, February 7, 2014 (Tr. 636-657). The Appeals Council again denied review, so ALJ Porter's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to lift/carry twenty pounds occasionally and ten pounds frequently, stand and/or walk about six hours in an eight-hour workday, and sit for six hours in an eight-hour workday, and could occasionally use foot controls, or climb ramps and stairs. He further determined that she could never climb ladders or scaffolds; crawl; work around unprotected heights or moving mechanical parts; have concentrated exposure to humidity, wetness, or dust, fumes, and gases; and work in any environments where there are temperature extremes. Additionally, the claimant required a sit/stand option allowing her to change positions at least every thirty minutes. As to her mental impairments, the ALJ limited her to simple tasks and simple work-related decisions, only occasional interaction with supervisors and coworkers, and no interaction with the general public. He further found that she would be off task 5% of the workday and may miss up to one day each month (Tr. 642). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, small products assembler, conveyer line bakery worker, and hospital products assembler (Tr. 657).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly evaluate the opinions of her treating physician, Dr. Charles Van Tuyl; (ii) by improperly assessing her

RFC; and (iii) by finding that she could return to her past relevant work. The Court finds these contentions unpersuasive for the following reasons.

On remand, the ALJ determined that the claimant had the severe impairments of asthma/COPD, lung nodules, obesity, lumbago of indeterminate etiology, headaches, hypertension, schizoaffective disorder, bipolar disorder, panic disorder, and personality disorder (Tr. 639). The claimant was hospitalized for an exacerbation of her COPD on January 29, 2008, and was released February 5, 2008 with prescriptions and inhalers (Tr. 329-332). She received regular treatment for her asthma/COPD, lung nodules, and other impairments at Rubin White Health Care Center and the Choctaw Nation Health Services beginning in 2002, and treatment notes largely consist of medication management (Tr. 482-543, 557-559, 856-885, 903-935).

As to her mental impairments documented in the record, Dr. Van Tuyl treated the claimant through Choctaw Nation Hospital in 2007 and 2008 for bi-polar disorder. His treatment notes indicate that the claimant reported post-partum depression after giving birth to her son in 2003, that she had gone through in-patient treatment for bi-polar disorder in 1997, and that she did not remember having manic episodes but that her family would tell her when she was manic (Tr. 467). The claimant reported some progress in her treatment, but was still depressed and had begun to experience a few audio/visual hallucinations in October 2008 (Tr. 457-466). On October 7, 2008, Dr. Van Tuyl completed a "Mental Status Form," stating that the claimant was not capable of remembering, comprehending, and carrying out simple or complex instructions on an independent basis, or responding to work pressure, supervision, and co-workers "at this

time" (Tr. 455). He stated that his diagnosis was: bipolar disorder II, panic disorder with agoraphobia, and generalized anxiety disorder (Tr. 455). Additionally, he stated that she could not handle funds because she had a tendency to go on spending sprees when her parents were not managing her finances (Tr. 455). On September 2, 2009, Dr. Van Tuyl completed a Mental Medical Source Statement, indicating that from December 31, 2007 to September 2, 2009, she had marked or severe limitations in almost all of the areas of functioning, and stated in his Functional Capacity assessment that "Pt has long history of bipolar disorder. She has both manic and depressive episodes. She is not able to tolerate even mild stress. I consider her unemployable due to her mental disorder" (Tr. 562-565).

Dr. Johnson Gourd completed a consultative examination of the claimant on July 31, 2010. He also completed a Medical Source Statement, finding that the claimant had a normal range of motion; that she could lift/carry up to 20 pounds frequently, sit six hours in an eight-hour workday, and stand/walk four hours in an eight-hour workday; that she could never be exposed to dust, odors, fumes, and pulmonary irritants; that she could only tolerate occasional exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, extreme cold, and extreme heat; and that she could handle frequent exposure to operating a motor vehicle and vibrations (Tr. 573-577).

On August 9, 2010, licensed Clinical Psychologist Denise LaGrand completed a Mental Status/Diagnostic evaluation. Ms. LaGrand assessed the claimant with schizoaffective disorder and personality disorder, NOS (borderline, avoidant traits), and assigned her a Global Assessment of Functioning (GAF) score of 50 (Tr. 589). Ms.

LaGrand found that the claimant had a low to below average estimate of being able to perform adequately in most job situations, handle the stress of a work setting, and deal with supervisors or co-workers (Tr. 589). She further noted that the claimant had moderate limitations in the ability to interact appropriately with the public, supervisors, or co-workers, as well as to respond appropriately to usual work situations and to changes in a routine work setting (Tr. 594). She based this on the claimant's mental healthcare provider's assessment that the claimant had limited ability to deal with stress (Tr. 594).

The clamant also continued to receive mental health treatment at the Choctaw National hospital with Dr. Ryan Magnus and Dr. Thomas Bonin for her mental impairments. Most of the chief complaints/presenting problems are suppressed for confidentiality in the medical records produced, but they do indicate that the claimant's diagnoses included bipolar disorder, generalized anxiety disorder, and panic disorder with agoraphobia (Tr. 794-855). From August 2009 through July 2013, notes reflect that the claimant's medications were adjusted, and that on July 22, 2010, she was assessed with a GAF of 60, a GAF of 61 on April 15, 2013, and a GAF of 80 by July 15, 2013 (Tr. 802, 816, 819). On April 26, 2012, Dr. Bonin indicated that he had signed a form for assistance through the Choctaw nation, stating that the claimant could not hold a job due to her asthma and bipolar disorder (Tr. 916). Dr. Magnus's work with the claimant focused on stabilizing her mood cyclicity and anxiety around others (Tr. 814-854).

In his written opinion, the ALJ thoroughly summarized the claimant's testimony and her mother's Third Party Function Report, as well as the medical evidence. As relevant to this appeal, the ALJ noted that Dr. Van Tuyl treated the claimant for her

mental impairments. He further noted that Dr. Van Tuyl's diagnoses changed over the years from bipolar II disorder to generalized anxiety disorder, and panic disorder with agoraphobia, and that by December 2, 2010, the claimant's sole diagnosis was "mood disorder" (Tr. 647-648). He further noted that the diagnosis of panic disorder was not in his treatment notes, but was listed on the medical source statement that he completed (Tr. 647). The ALJ also took special note of the numerous GAF scores in the record, listing many of them, and noting that while a GAF of 50 or less suggests an inability to keep a job, she had only been assessed with a GAF of 50 one time by consultative examiner LeGrand, and thus gave greater weight to the scores assessed by Dr. Van Tuyl and Dr. Magnus but did not use the scores as the sole basis for his decision (Tr. 650-651). As to Dr. Van Tuyl's medical source statement, the ALJ summarized it, and noted that opinions that the claimant cannot work are reserved to the Commissioner but that almost a year had lapsed between the claimant's previous visit and the completion of the MSS. He found that the MSS was inconsistent with Dr. Van Tuyl's own treatment records from the same day, as well as a later GAF of 60, indicating moderate symptoms (Tr. 651). The ALJ further summarized Dr. Magnus's treating records, including his notes that the claimant's mood cyclicity was controlled on her medications (Tr. 648, 651). He further recognized Dr. Bonin's statement that the claimant was unable to hold a job, but again stated that was an opinion reserved to the Commissioner and that it was inconsistent with treating notes that same day showing normal lungs and only periodic shortness of breath. He also noted that such an opinion contrasted with Dr. Magnus's finding that her moods were controlled with medication and longitudinal diagnostic studies (Tr. 651). He then

gave Dr. Gourd's opinion great weight with regard to exertional and postural limitations that were warranted in light of her impairments and lumbago, but little weight to limitations not carefully tailored to the evidence in the record, such as those related to gait, motor, strength, or cranial nerves limiting her to walking four hours a day (Tr. 652). The ALJ then only gave "some" weight to Dr. LaGrand's opinion, because she did not assess the claimant's difficulty with performing detailed or complex tasks, although her overall findings of moderate limitations were supported by the record (Tr. 652). He then gave little weight to the state reviewing opinion that the claimant had no severe mental impairment because they were documented in the record, and only some weight to the state reviewing physician's physical assessments because she was further exertionally, posturally, and environmentally limited (Tr. 653).

The claimant first contends that the ALJ failed to properly analyze Dr. Van Tuyl's opinion as a treating physician. The Court finds that the ALJ did not, however, commit any error in his analysis. As Dr. Van Tuyl was a treating physician, the ALJ was required to give his medical opinion controlling weight if it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). Even if the ALJ did conclude that his opinion was not entitled to controlling weight, he was nevertheless required to determine the proper weight to give it by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to

deference and must be weighed using all of the factors provided in [§] 404.1527."), *quoting Watkins,* 350 F.3d at 1300. Those factors are: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship. (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). And if the ALJ decided to reject any of Dr. Van Tuyl's medical opinions entirely, he was required to "give specific, legitimate reasons for doing so[,]" *id.* at 1301, so it would be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ's analysis of the opinion of Dr. Van Tuyl is set forth above. The undersigned Magistrate Judge finds that the ALJ considered his opinion in accordance with the appropriate standards and properly concluded it was entitled to little weight. The ALJ noted and fully discussed the findings of the claimant's various treating, consultative, and reviewing physicians, including Dr. Van Tuyl, whose opinion contradicted his own treating notes, as discussed at length by the ALJ. The ALJ thus did not commit error in failing to include any limitations imposed by Dr. Van Tuyl in the claimant's RFC. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment."). The ALJ's opinion was therefore sufficiently clear for the Court to determine the weight he gave to

Dr. Van Tuyl's opinion, as well as sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") [internal citation omitted].

As to the claimant's second contention regarding the RFC assessment, the court finds that the ALJ specifically noted the various findings of the claimant's treating, consultative, and reviewing physicians, specifically the assessments regarding her mental impairments and the attendant GAF scores, *then adopted* any limitations suggested in the medical record, *and still concluded* that she could perform less than the full range of light work. When all the evidence is taken into account, the conclusion that the claimant could perform light work is thus supported by substantial evidence. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

As part of this second contention, the claimant argues that the ALJ should not have given credit to the more recent evidence in the record that the claimant had improved, and should have obtained updated consultative examinations regarding both her asthma and her mental impairments. The ALJ has "broad latitude" in deciding whether or not to order a consultative examination. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d

774, 778 (10th Cir. 1990). "When the claimant has satisfied his or her burden" of presenting evidence suggestive of a severe impairment, "then, and only then, [it] becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment." *Id*. at 1167. Here, the ALJ specifically stated in his opinion that he believed the medical evidence of record had been adequately developed because the record contained recent chest x-rays and treating notes were "replete with numerous respiratory findings on objective physical examination," and the mental health record demonstrated a "longitudinal treating psychiatrist perspective," both of which were "more than adequate" in this case (Tr. 649). This was sufficient exercise of the ALJ's broad latitude.

The essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine her RFC differently from the Commissioner, which the Court simply cannot do. The ALJ specifically noted every medical record available in this case, *and still concluded* that she could work. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard*, 379 F.3d at 949. *See also Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir.2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is

well within the province of the ALJ."), citing 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

The claimant's last contention is that she is unable to perform the jobs identified because she cannot perform the RFC set forth by the ALJ. But as discussed above, the Court finds that substantial evidence supports the ALJ's determination that the claimant can perform less than the full range of light work. The final contention is therefore without merit.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 26th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**